FILED
2015 Mar-31  AM 08:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **KAREN SUE BENFORD,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 6:13-CV-00397-MHH |
| **CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,** | } |
| **Defendant.** | } |

# MEMORANDUM OPINION

## I.   Introduction

Plaintiff Karen Sue Benford brings this action pursuant to Title II of Section 405(g) of the Social Security Act.  Ms. Benford seeks review of the decision by the Commissioner of the Social Security Administration[1] denying her claims for a period of disability and disability insurance benefits.  *See* 42 U.S.C. § 405(g).  After careful review, the Court finds that substantial evidence supports the ALJ's decision.  Therefore, the Court affirms the Commissioner's ruling.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as defendant in this action.  *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending . . . Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

## II.     STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Soc. Sec. Admin.  Comm'r*, 522 Fed. Appx. 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it."  *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed.  Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. PROCEDURAL AND FACTUAL BACKGROUND

On April 9, 2010, Ms. Benford filed an application for a period of disability and disability insurance benefits. (Doc. 12-4, p. 2). The Commission denied the claims a few months later. (Doc. 12-5, p. 4). At Ms. Benford's request, an ALJ conducted a hearing and reviewed the Commissioner's decision. (Doc. 12-3, p. 24; Doc. 12-5, p. 9). Ms. Natalie Maurin, a vocational expert ("VE"), and Mr. Timothy Zanaty, Ms. Benford's attorney, appeared at the hearing with Ms. Benford. (Doc. 12-3, p. 24).

At the time of her hearing, Ms. Benford was 44 years old.[2] Ms. Benford has a high school education and is able to communicate in English. (Doc. 12-3, p. 29). She worked in the past as a bookkeeping secretary. (Doc. 12-3, p. 29). The ALJ found that Ms. Benford was capable of performing past relevant work as a secretary. (Doc. 12-3, p. 19). Therefore, the ALJ denied Ms. Benford's request for disability benefits. (*Id.*). To evaluate Ms. Benford's claim, the ALJ applied the Social Security Administration's "five-step sequential evaluation process for determining if an individual is disabled." (Doc. 12-3, pp. 13–14).

At step one, the ALJ found that Ms. Benford had not "engage[d] in substantial gainful activity during the period from her alleged onset date of March

---

[2] At 44 years of age, 20 C.F.R. § 404.1563 designates Ms. Benford as a "younger person," which means, generally, her age will not be considered to seriously affect her ability to adjust to other work.

3

16, 2010 through her date last insured of December 31, 2011." (Doc. 12-3, p. 15). At step two, the ALJ found that Ms. Benford has the following severe impairments: "vertebrobasilar insufficiency, status-post stent and closure of carotid artery aneurysm, and peripartum cardiomyopathy." (Doc. 12-3, p. 15). The ALJ stated that these impairments "more than minimally impact [Ms. Benford's] ability to perform basic work activity." (Doc. 12-3, p. 15). The ALJ concluded that Ms. Benford suffers from sensorineural hearing loss and anxiety but determined that these impairments were not severe under the Regulations. (Doc. 12-3, p. 15; Doc. 12-9, p. 67).[3]

At step three, the ALJ concluded that Ms. Benford had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[,] except only frequent, but not constant use of the right, dominant upper extremity, and no exposure to unprotected heights, dangerous machinery, or commercial driving." (Doc. 12-3, p. 16; Doc. 12-9, pp. 55–61). In reaching her conclusion, the ALJ considered the assessment of consultative examiners, the residual functional capacity ("RFC") assessment by Dr. Katrina Paige-Hand, Ms. Benford's medication regimen and treatment history, and testimony about Ms. Benford's ability to perform daily activities. (Doc. 12-3, p. 18).

---

[3] The ALJ's findings are consistent with Ms. Benford's medical records. Throughout this opinion, there are citations to both the ALJ's decision and supporting documents such as medical records.

Medical records and notes from various physicians support the ALJ's RFC assessment. In July 2010, Dr. Boyde Harrison, a consultative examiner, found that Ms. Benford had 2/4 grip strength in the right hand and 4/4 grip strength in the left hand. (Doc. 12-3, p. 17; Doc. 12-9, p. 52). Dr. Gary Turner, a consultative examiner, found that Ms. Benford had abnormal tracking during ocular motor testing and 10-percent right-sided weakness, which is within the normal limits. (Doc. 12-3, pp. 17–18; Doc. 12-9, p. 65). Treatment notes show that Ms. Benford's "audiological study demonstrated only very slight sensorineural hearing loss with 100% discrimination." (Doc. 12-3, p. 15; Doc. 12-9, p. 67). Dr. Paige-Hand's RFC assessment indicated that Ms. Benford could perform light work, and Dr. Paige-Hand noted that Ms. Benford's "statements about her symptoms and functional limitations are partially credible as the severity alleged is not consistent with the objective findings[.] . . ." (Doc. 12-9, p. 59). Treatment notes by Dr. Camilo Gomez from physical examinations in March 2010 and April 2010 show that Ms. Benford had "normal eye movement, attention, muscle strength, coordination, and ambulation despite her complaints of dizziness [and headaches]." (Doc. 12-3, p. 18; Doc. 12-9, pp. 36–37). The ALJ analyzed Ms. Benford's medication regimen and treatment history. She found that Ms. Benford was taking Enalapril, Metropolol, Apsirin, Topamax, Amitriptyline, Nexium, Coumadin, Plavix, Zantac, and Xanax. (Doc. 12-3, p. 17).

In March and April of 2010, Ms. Benford complained of headaches and dizziness. (Doc. 12-3, p. 17). Those symptoms resulted from heart problems that required surgery, but Ms. Benford recovered after surgery. Imaging showed that Ms. Benford "experienced a left internal carotid artery aneurysm, and thus, she underwent a stent and closure of the left internal carotid artery." (Doc. 12-3, p. 17; Doc. 12-9, p. 33). "Subsequent to her surgery, treatment notes show [that Ms. Benford] continued to complain of dizziness and headaches." (Doc. 12-3, p. 17; Doc. 12-9, p. 71). Dr. Gomez's treatment notes indicate that Ms. Benford complained of shortness of breath after climbing a flight of stairs and walking half a block. (Doc. 12-3, p. 17; Doc. 12-10, p. 16). Dr. Gomez noted that Ms. Benford had normal gait without any instability, and her ejection fraction had normalized. (Doc. 12-3, p. 18; Doc. 12-9, p. 76; Doc. 12-10, p. 16). Additionally, Ms. Benford testified that she can perform daily activities like "caring for her own personal needs, prepar[ing] sandwiches, and occasionally shop[ping] and do[ing] laundry." (Doc. 12-3, pp. 18, 33–34).

The ALJ found that Ms. Benford's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were contradicted by the objective medical evidence. (Doc. 12-3, p. 17). Ms. Benford testified that she experiences headaches every day and that approximately eight to ten times per month the headaches last approximately ten hours. (Doc. 12-

3, pp. 17, 38, 42). She also stated at the hearing that she has constant left-sided facial pain and naps three to four hours daily because of the side effects of her medication. (Doc. 12-3, pp. 17, 43). The ALJ considered and gave little weight to the March 23, 2011 opinion letter from Dr. Vanessa Ragland, Ms. Benford's treating physician. (Doc. 12-3, p. 18). Dr. Ragland listed Ms. Benford's medical problems and opined that Ms. Benford could not comfortably perform any gainful employment. (Doc. 12-3, p. 18; Doc. 12-9, p. 98).

Ultimately, the ALJ found that Ms. Benford was capable of performing past relevant work as a secretary, a semi-skilled position with a sedentary exertional level. (Doc. 12-3, p. 19). The ALJ opined:

> The above position meets the recency, duration, and substantial gainful activity requirements to qualify as past relevant work. Specifically, [Ms. Benford] has performed this position within the past fifteen years; for a sufficient duration for [Ms. Benford] to learn the responsibilities of the position and reach an average performance level; and, above the level required to be classified as substantial gainful activity. This past relevant work profile is consistent with the testimony of the vocational expert.

(Doc. 12-3, p. 19). The ALJ relied on the testimony of Ms. Maurin, a vocational expert, who testified that a person with Ms. Benford's age, education, experience, and skillset would be able to perform her past work. (Doc. 12-3, pp. 44–45). Because Ms. Benford could perform past work, the ALJ found that Ms. Benford is "not disabled" under sections 216(i) and 223(d) of the Social Security Act. (Doc. 12-3, p. 19).

7

On January 23, 2013, the ALJ's decision became final when the Appeals Council denied review of the ALJ's decision.[4] (Doc. 12-3, p. 2). Having exhausted all administrative remedies, Ms. Benford appealed the ALJ's decision to this Court under 42 U.S.C. § 405(g).

**IV.     ANALYSIS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

To determine whether a claimant is disabled, the ALJ applies a sequential, five-step sequential analysis:

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

---

[4] The Court has reviewed the additional evidence submitted to the Appeals Council by Ms. Benford's attorney. (Doc. 12-3, p. 7).

*Gaskin*, 533 Fed. Appx. at 930 (citing 20 C.F.R. § 404.1520(a)(4)). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); 20 C.F.R. § 404.1545(a)(1).

The ALJ found that Ms. Benford's "vertebrobasilar insufficiency, status-post stent and closure of carotid artery aneurysm, and peripartum cardiomyopathy" were "severe impairments" that limit her ability to perform basic work activities. (Doc. 12-3, p. 15). Nevertheless, the ALJ concluded that Ms. Benford is not disabled because she is capable of performing past relevant work as a secretary. (Doc. 12-3, p. 19). The ALJ based her decision on Dr. Paige-Hand's physical and RFC assessment, assessments by consultant physicians, and testimony by the vocational expert, Ms. Maurin, that a person of Ms. Benford's age, education, work experience, and RFC would be capable of working as a secretary. (Doc. 12-3, p. 19).

Ms. Benford argues that "the ALJ is selectively choosing medical evidence to support her contention and fails to properly credit the evidence as a whole which overwhelmingly supports [Ms. Benford's] allegations of debilitating symptoms." (Doc. 17, p. 6). Ms. Benford contends that "[t]he ALJ failed to properly credit [Ms. Benford's] testimony" of "debilitating dizziness, headaches, weakness and

9

fatigue." (Doc. 17, pp. 3, 6). Ms. Benford cites evidence in the record that corroborates her contentions about the intensity and persistence of her pain; however, substantial evidence in the record supports the ALJ's credibility assessment and findings about the extent of Ms. Benford's debilitating symptoms.

In *Wilson v. Barnhart*, the Court reaffirmed the pain standard set forth in *Holt v. Sullivan*, stating:

> [T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Thus, a claimant "who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991); *See* 20 C.F.R. §§ 404.1529 and 416.929.

Elaborating on the pain standard, the *Wilson* court stated that if the "ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.

1988)). In addition to testimony and medical records, the ALJ may consider the claimant's daily activities, the frequency of his symptoms, and the types and dosages of his medications in determining the credibility of subjective pain testimony. *Dyer v. Barnhart*, 395 F.3d 1206, 1209 (11th Cir. 2005) (holding that the district court "improperly reweighed the evidence" by reversing the ALJ's decision after he found the claimant's subjective complaints to be inconsistent with her activities of daily living, frequency of symptoms, and the type and dosage of medications).

The ALJ articulated reasons for discrediting Ms. Benford's subjective pain testimony to the extent that it conflicted with the RFC assessment and objective medical evidence of record. (Doc. 12-3, pp. 17–18). The ALJ found that Ms. Benford's allegation that her dizziness and weakness were debilitating was "inconsistent" with objective medical evidence. (Doc. 12-3, p. 18). Dr. Gomez's physical examinations in March 2010 and April 2010 show Ms. Benford had "normal eye movement, attention, muscle strength, coordination, and ambulation despite her complaints of dizziness." (Doc. 12-3, p. 18; Doc. 12-9, pp. 36–37). Dr. Turner's examination in October 2010 revealed that Ms. Benford's complaints of weakness amounted to ten percent weakness on her right-side, which is considered within normal limits. (Doc. 12-3, p. 18; Doc. 12-9, p. 65).

The ALJ stated that Ms. Benford's allegations of debilitating, ten-hour headaches occurring eight to ten times a month, and debilitating fatigue due to medication, were unsubstantiated by objective medical evidence in the record. (Doc. 12-3, p. 18). Although medical evidence may not prove that pain exists, it must substantiate that an impairment could reasonably be expected to cause the pain Ms. Benford alleges. *See Elam*, 921 F.2d at 1215. After reviewing objective evidence in the record, the ALJ concluded that Ms. Benford's impairments could not reasonably be expected to produce ten-hour-long headaches eight to ten times a month. (Doc. 12-3, pp. 17–18).

While Ms. Benford supports her claim by citing portions of treatment notes from Dr. Gomez, those treatment notes also support the ALJ's decision. Ms. Benford points to Dr. Gomez's reports, which indicate that he was frustrated that he could "not seem to be able to get [Ms. Benford] better control for her headaches." (Doc. 17, p. 11; Doc. 12-10, p. 27). But this note does not negate the substantial evidence upon which the ALJ concluded that Ms. Benford's impairments were not causing her to have the debilitating headaches she alleged. In fact, Dr. Gomez stated that Ms. Benford's report of headaches "were premorbid," which suggests that Dr. Gomez believed that Ms. Benford's headaches did not result from her impairments of vertebrobasilar insufficiency, status-post stent and closure of carotid artery aneurysm, and peripartum cardiomyopthy. (*See*

Doc. 12-9, p. 82). Dr. Gomez's treatment notes show that he did not know what caused Ms. Benford's headaches or how to treat them effectively. (Doc. 12-9, pp. 84, 86). Dr. Gomez regarded her complaints as "strange" and was "somewhat puzzled" by her symptoms since her "MRI does not show any evidence of infarction of any kind." (Doc. 12-9, pp. 84, 86).

Social Security Ruling 96-7P provides support for the ALJ's decision. Ms. Benford relies on Social Security Ruling 96-7P to argue that her documented history of complaints and attempts for relief supports her argument that her pain was debilitating. (Doc. 17, p. 6). *See* SSR 96-7P 1996 WL 374186 at *7 (stating that a "longitudinal medical record demonstrating . . . attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to . . . allegations of intense and persistent pain . . . for the purposes of judging the credibility of the individual's statements"). On the other hand, SSR 96-7P also states that the "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7P 1996 WL 374186 at *7. The ALJ found that Ms. Benford's claim of frequent headaches did not square with the evidence. The record shows that Ms. Benford complained of headaches only eight times since her alleged onset date in

March 2010.[5]  (Doc. 12-3, p. 18).  Other information in the medical record, such as Ms. Benford's follow-up visits being scheduled for five to eight weeks later, supports the conclusion that her headaches were not as debilitating and severe as she alleges.  (Doc. 12-9, pp. 94, 96).

Ms. Benford argues that Dr. Bourge "endorsed left-sided headaches and was concerned about memory loss."  (Doc. 17, p. 8).  However, the medical record shows that it was not Dr. Bourge but Ms. Benford who reported left-sided headaches and concern for memory loss as subjective complaints before being examined.  (Doc. 12-10, p. 35).  Mere complaints are not sufficient; there must be a medical condition that could reasonably be expected to result in the alleged pain.  In determining that one did not exist, the ALJ properly assessed Ms. Benford's credibility by comparing her complaints to the objective evidence.  (Doc. 12-3, p. 18); *see also Arnold v. Heckler*, 732 F.2d 881, 883–84 (11th Cir. 1984) ("[T]he [ALJ] may properly challenge the credibility of a claimant who asserts he is disabled by pain. . . . [T]he resolution of conflicting evidence is for the Secretary and the [ALJ].") (internal quotations and citations omitted).

As for Ms. Benford's fatigue, the ALJ found that no medical records suggest that Ms. Benford's medications caused her alleged drowsiness.  (*See* Doc. 12-3, p. 18).  In October 2010, Dr. Gomez noted in his treatment record that Ms. Benford

---

[5] This determination was made based on evidence submitted at the time of the hearing on November 3, 2011, a year and seven months from the alleged onset date.  (*See* Doc. 12-3, p. 48).

14

"has no side effects from the medication." (Doc. 12-9, p. 81). The ALJ found that the evidence did not support a medical need to take these naps during the day because the reason for the naps—Ms. Benford's debilitating pain and drowsiness—was unsupported by the record. (Doc. 12-3, p. 18).

The ALJ relied on Ms. Benford's testimony to conduct the RFC assessment, crediting it to the extent it was consistent with the medical record. The ALJ considered but gave little weight to Ms. Benford's complaints that were "less than fully credible" due to inconsistency with the medical evidence. (Doc. 12-3, p. 18). The complaints of dizziness and headaches led the ALJ to limit Ms. Benford to "work requiring no exposure to heights, dangerous machinery, or commercial driving." (Doc. 12-3, p. 17). Ms. Benford's weakness due to reduced strength in her upper right extremity and shortness of breath led the ALJ to limit her to light work with frequent, but not constant use of her right, dominant upper extremity. (Doc. 12-3, p. 17).

Ms. Benford argues that the ALJ ignored the severity of her heart condition, which was classified by Dr. Bourge as between Class II and III according to the New York Heart Association (NYHA) ranges. (Doc. 12-10, p. 17). Ms. Benford's most recent classification of record was Class II in August 2011. (Doc. 12-10, p. 36). Within this class, the NYHA represents that she may have a "slight limitation" during ordinary physical activity. (Doc. 17, p. 7).

15

An ALJ commits reversible error "if complaints of subjective pain are disregarded simply because they are not supported by objective clinical and laboratory medical findings." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). The ALJ must "necessarily review the medical evidence and make a credibility determination in assessing the claimant's disability on the basis of pain." *Id.* at 624. Here, as in *Gibson*, the ALJ considered Ms. Benford's claims but found them not fully credible based on all of the evidence in the record. The ALJ concluded that Ms. Benford's condition could not reasonably give rise to her alleged pain. *See id.* at 623–24. (holding that the ALJ properly considered the claimant's testimony but still found that the ALJ "determined that the claims of severe pain were not credible and that [claimant's] pain was not sufficient to be disabling"). Without satisfying the third prong of the pain standard, Ms. Benford fails to show that her pain renders her disabled. Thus, the Court finds that the ALJ's credibility determination was supported by substantial evidence.

Ms. Benford argues that the ALJ "failed to properly articulate good cause for according less weight to the opinion of [Ms. Benford's] treating physician." (Doc. 17, p. 13). The Court disagrees. The ALJ properly considered and decided to give less weight to Dr. Ragland's opinion that Ms. Benford could not work.

A medical source's statement that a claimant is "unable to work" or "disabled" does not bind the ALJ, who alone makes the ultimate determination as

16

to disability under the regulations. *Miles v. Soc. Sec. Admin., Comm'r*, 469 Fed. Appx. 743, 745 (11th Cir. 2012) (*See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)). Nevertheless, the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*; *see also Crawford*, 363 F.3d at 1159. "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error. 'Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'" *Gaskin*, 533 Fed. Appx. at 931 (citing *Lewis*, 125 F.3d at 1440, and quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

In this case, the ALJ articulated adequate reasons for according Dr. Ragland's opinion "little weight." The ALJ found that Dr. Ragland's statement that Ms. Benford could not "comfortably perform any gainful employment" was too vague because it did not offer specific work-related limits that Ms. Benford would experience because of her impairments. (Doc. 12-3, p. 18; Doc. 12-9, p. 98). The statement that Ms. Benford cannot perform gainful employment is a

determination reserved for the ALJ. Dr. Ragland offers no medical opinion concerning the extent to which Ms. Benford is physically or mentally limited due to her impairments. Dr. Ragland merely listed Ms. Benford's medical problems and stated that she has "an extreme medical history" to support Dr. Ragland's conclusion of disability. (Doc. 12-9, p. 98). Thus, Dr. Ragland's medical opinion is conclusory. *See Osborn v. Barnhart*, 194 Fed. Appx. 654, 667 (11th Cir. 2006) (finding an ALJ's decision supported by substantial evidence where the ALJ accords a physician's opinion letter less weight because the letter did not indicate specific limitations that the claimant's impairments might place on the claimant's ability to work).

Thus, the Court finds that the ALJ articulated good cause for according less weight to the opinion of Ms. Benford's treating physician, Dr. Ragland. The Court finds that the ALJ's decision rests on substantial evidence.

## V. CONCLUSION

The Court concludes that the ALJ's decision is based upon substantial evidence and consistent with applicable legal standards. The Court will not reweigh the evidence. Accordingly, the Court affirms the Commissioner's decision. The Court will enter a final judgment.

**DONE** and **ORDERED** this March 30, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE